**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheri Loper, | No. CV-18-08316-PCT-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Sheri Loper's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Doc. 1 at 1–2). This matter has been fully briefed by the parties.[1] The Court now rules on Plaintiff's appeal.

## I.     BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in Administrative Law Judge ("ALJ") Joan G. Knight's September 26, 2017 decision. (*See* Doc 12-3 at 50–62). Accordingly, the Court will reference the background only as necessary to the analysis below.

## II.    LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the

---

[1] (*See* Doc. 13; Doc. 14; Doc. 15).

record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching [her] findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations omitted).

Furthermore, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194,

196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

### A.    Definition of a Disability

A claimant can qualify for Social Security disability benefits only if she can show that, among other things, she is disabled. 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B.    The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ next considers whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's residual functional capacity ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1–2).

At step four, the ALJ determines whether, despite her impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the

claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529.

### C.      The ALJ's Evaluation under the Five Step Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2013, the alleged onset date. (Doc. 12-3 at 50). In step two, the ALJ ascertained that Plaintiff had the following severe impairments: "right shoulder recurrent adhesive capsulitis, status post left knee replacement, right knee osteoarthritis, status post lumbar fusion, spinal stenosis, mood disorder NO, and cognitive disorder NOS." (*Id.* at 51). Under the third step, the ALJ determined that the severity of Plaintiff's impairments, singly and in combination, did not meet or medically equal the severity of the impairments listed in the Social Security Regulations. (*Id.*).

Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (*Id.* at 53). The ALJ determined that, from February 12, 2015 to September 30, 2016 (the recovery period following Plaintiff's surgeries), Plaintiff had "the residual functional capacity to perform a reduced range of light and sedentary

work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)." (*Id.*). She added that Plaintiff could have carried up to twenty pounds occasionally and ten pounds frequently, stood or walked for two hours at a time, frequently balanced and climbed stairs, and occasionally crawled. (*Id.* at 53–54). The ALJ also determined that, from October 15, 2013 to February 11, 2015 (the period prior to Plaintiff's surgery) and from October 1, 2016 to the present (the period following her recovery), Plaintiff had "the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c)." (*Id.* at 53). She added that Plaintiff could carry up to fifty pounds occasionally or twenty pounds frequently, stand or walk for four hours at a time, frequently balance and climb stairs, and occasionally crawl and climb ladders. (*Id.*).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a barber due to limitations on "her frequent handling and fingering." (*Id.* at 59–60). Finally, at step five the ALJ evaluated Plaintiff's RFC, age, education, and work experience. She concluded that, from October 15, 2013 to February 11, 2015 and from October 1, 2016 to the present, she could have performed a significant number of jobs in the national economy (*Id.* at 60). However, from February 12, 2015 to September 30, 2016, the ALJ found the opposite. (*Id.* at 61). Consequently, she concluded that Plaintiff was disabled only from February 12, 2015 to September 30, 2016, and not any other time period. (*Id.* at 62).

## III.    ANALYIS

Plaintiff argues that the ALJ's decision should be vacated because the ALJ improperly found that she improved enough to perform alternative work and improperly rejected her credible, material testimony. (Doc. 13 at 19). Specifically, Plaintiff argues that: (1) the ALJ improperly found substantial evidence that her left knee improved after surgery; (2) the ALJ improperly identified her "lack of more aggressive treatment" as substantial evidence that her right knee improved; (3) the ALJ improperly relied on medical images of Plaintiff's spine as substantial evidence of medical improvement; (4) the ALJ improperly relied on Plaintiff's daily activity as substantial evidence of medical

improvement; (5) the ALJ improperly relied on Dr. Cano's examination as substantial evidence of medical improvement; and (6) the ALJ improperly discredited Plaintiff's credible testimony without a "clear and convincing" reason. (*Id.* at 6–17). Accordingly, Plaintiff asks that the ALJ's decision be reversed and remanded for an award of benefits. (*Id.* at 19). However, for the reasons set forth below, the final decision of the Commissioner is affirmed.

## A.   Whether substantial medical evidence showed Plaintiff's left knee improved after surgery

Plaintiff first claims that the ALJ erred in finding substantial evidence that her left knee improved after surgery. (*Id.* at 8). She critiques the opinions of both Dr. Heiner and Dr. Schmitter. Her arguments fail.

### 1.   Dr. Heiner's Evaluations

Plaintiff contends that the ALJ misconstrued Dr. Heiner's progress notes issued four months after her February 25, 2016 knee replacement. (*Id.*). In them, Dr. Heiner wrote that "many times it takes over four to six months to get through a knee replacement." (Ex. 32F at 21). Plaintiff claims this does not mean that her knee actually healed within that time frame. (Doc. 13 at 8). However, Dr. Heiner's estimate certainly supports that it did— especially when considered with his additional notes that Plaintiff's left knee "demonstrate[d] essentially a completely normal knee replacement" with a range of motion of up to 120 degrees, "normal distal pulses," "normal sensation," "typical warmth," "no excessive induration, swelling, or edema," and "no mechanical deficits." (Ex. 32F at 21). This shows substantial improvement from Plaintiff's preoperative condition: "[c]omplete obliteration" of the patellofemoral joint and "severe arthrosis of both the medial and lateral compartments with large areas of delaminating bone." (Ex. 31F at 1). Other medical notes before Plaintiff's surgery also show that she once required an assistive device to walk, (Ex. 24F at 25, 30, 35, 40), whether a cane, (Ex. 25F at 16, 32), or a walker, (Ex. 33F at 21)— neither of which she needed after her recovery (Ex. 30F at 2, Ex. 31F at 4, Ex. 32F at 5).

Dr. Heiner acknowledged Plaintiff's subjective complaints of pain, but he also noted

upon examination that "there were no complications in the immediate postoperative phase, and otherwise she was doing fine up until [four months post-surgery] . . . [when] she seem[ed] to think things [we]re worsening." (Ex. 32F at 20). At that point, he "reassured her everything [wa]s appropriate. Her knee replacement look[ed] just fine. There [wa]s no evidence that it had an atypical pattern to it." (*Id.* at 21). In fact, x-rays from less than a month after her surgery "demonstrate[d] a well-seated, cemented total knee arthroplasty in neutral alignment. There [we]re no signs of displacement of the components; no signs of loosening and no fractures or dislocations evident." (*Id.* At 2). Just three months out of surgery, Dr. Heiner noted that Plaintiff's "knee replacement [was] working just fine" and had an "excellent outcome." (*Id.* at 17). Five months out, on July 29, 2016, he reiterated that "generally everything appears appropriate about the knee replacement." (*Id.* at 23). Dr. Heiner may not have deemed Plaintiff's knee *perfectly* healed, but he identified normal healing patterns and provided no reason why her knee would not continue to improve in the usual four to six months. At a minimum, by September 16, 2016, he reported that he "[was] unable to identify any significant abnormalities" and that Plaintiff "[did] not really have much in the way of pain in the past bursa region" (her problem area) after she received a pes anserine bursa injection. (*Id.* at 33). Ultimately, the ALJ reasonably deferred to Dr. Heiner's continued, firsthand evaluations as substantial evidence of Plaintiff's sustained left knee recovery by October 1, 2016. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques . . . .").

### 2.     The Opinion of Dr. Schmitter

Moreover, on October 1, 2016, medical expert Dr. Schmitter issued his own opinion on Plaintiff's left knee replacement surgery. (Ex. 30F). After reviewing her records, he estimated that her left knee recovered in just three months, sometime in May 2016—even shorter than the four-to-six-months posed by Dr. Heiner. (*Id.* at 9). Dr. Schmitter also concluded that Plaintiff, by the time of his opinion, could lift and carry up to twenty pounds frequently and fifty pounds occasionally, (*id.* at 1), sit, stand, or walk for four hours at a

time without interruption (or a cane), (*id.* at 2), occasionally climb ladders, stoop, kneel, crouch, and crawl, (*id.* at 4), and frequently climb stairs and balance, (*id.*). All of this supported Plaintiff's residual functional capacity to perform medium work again. *See* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.").

Based on this opinion, too, the ALJ correctly found objective medical improvement. *See* 20 C.F.R. § 404.1594(c)(1) ("Medical improvement is any decrease in the medical severity of impairment(s) present at . . . the most recent . . . medical decision that [Plaintiff] w[as] disabled . . . and is determined by a comparison of prior and current medical evidence which must show that there have been changes . . . in the symptoms."); *Attmore v. Colvin*, 827 F.3d 872, 874 (9th Cir. 2016) ("[A]n ALJ should compare the medical evidence used to determine that the claimant was disabled with the medical evidence existing at the time of asserted medical improvement."). Here, Plaintiff's RFC for medium work surpassed her prior capacity for "a reduced range of light and sedentary work"—only able to carry twenty pounds occasionally and ten pounds frequently and stand or walk for two hours at a time. (Doc. 12-3 at 54). This increase in Plaintiff's RFC was based on objective medical improvement; and that improvement, in turn, expanded her occupational options. *See* 20 C.F.R. § 404.1594(b)(3) ("Medical improvement is related to [Plaintiff's] ability to do work if there has been . . . an increase in [her] functional capacity to do basic work . . . ."). The ALJ thus reasonably found that Dr. Schmitter's assessment reinforced the conclusions in Dr. Heiner's recovery notes. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (holding that non-treating physicians can serve as substantial evidence when they back up the findings of treating physicians).

Based on her reasonable finding of substantial evidence, the ALJ did not error in concluding that Plaintiff's left knee objectively improved.

**B.** **Whether the ALJ improperly identified Plaintiff's "lack of more aggressive treatment" as substantial evidence that her right knee improved**

Plaintiff next claims that the ALJ erred in identifying her "lack of more aggressive

treatment" as substantial evidence that her right knee improved. (Doc. 13 at 10). Her argument here also fails.

On April 12, 2016, Dr. Heiner told Plaintiff that she faced "all the exact same issues as [her] left knee" with her right knee. (Ex. 32F at 9). Although Plaintiff contends that the record lacks evidence of alternative treatments (Doc. 13 at 11), Dr. Heiner offered a variety of courses including "diagnostic arthroscopy, cortisone injections, Synvisc injections, lubricating gel injections, physical therapy, and . . . partial or total knee replacements"—just as with her left knee. (Ex. 32F at 9). Plaintiff resorted to physical therapy while waiting on her left knee recovery. (*Id.*). At Plaintiff's visit one month later, Dr. Heiner recommended Hyalgan injections, (*id.* at 13), and Plaintiff subsequently received three of them to ease her pain, (*id.* at 14, 18). After each injection, Heiner recorded that Plaintiff "was able to move the [right] knee without difficulty." (*Id.* at 13, 19). Plaintiff never opted for right knee surgery or any other course of treatment initially proposed by Dr. Heiner. Her minimalist approach, especially considering her willingness to undergo *left* knee surgery, suggests that her right knee did not suffer as much and, therefore, did not disable her. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that conservative medical treatment suggests less pain and functional limitation).

Plaintiff responds by citing *Carmickle v. Comm'r, Soc. Sec. Admin.*,[2] asserting that she had "good reason" for refusing "more aggressive treatment." (Doc. 13 at 12). She claims that the side effects of the cortisone shots, specifically her sixty-pound weight gain, forced her to stop. (*Id.*; Trans. at 28). However, *Carmickle* describes a patient who declined the "*only* [treatment] that . . . provided significant relief without . . . intolerable side effects" because insurance did not cover it. 533 F.3d at 1162 (emphasis added). Here, although Plaintiff may have reasonably sought to avoid gaining weight on cortisone shots, she still neglected various backup options. Most notably, she did not pursue surgery on her right knee despite its objectively favorable outcome on her left knee. Even if she claims that the left knee surgery caused more side effects than benefit, she still never tried other types of

---

[2] 533 F.3d 1155, 1162 (9th Cir. 2008).

injections, less-invasive-than-surgery arthroscopy,[3] or even a *partial* knee replacement. Nor did she express concern about a lack of options to Dr. Heiner or specifically ask him about alternatives beyond what he had already mentioned. Therefore, because Plaintiff chose modest treatment and ignored other viable options, the ALJ reasonably found substantial evidence that her right knee did not disable her or, even if it once did, it improved with physical therapy and injections.

**C.     Whether the ALJ improperly relied on medical images of Plaintiff's spine as substantial evidence of medical improvement**

Plaintiff next claims that the ALJ improperly relied on medical images showing "failed" results from her spinal surgery as substantial evidence of objective medical improvement. (Doc. 13 at 12). Her argument here, too, fails.

The ALJ acknowledged that when Plaintiff's back pain did not improve with bilateral steroid injections, she "underwent a[n] L5-S1 decompression laminectomy with L4-L5 and L5-S1 bilateral instrumented intertransverse fusion and left L5-S1 transforaminal lumbar interbody fusion . . . However, subsequent to the procedure, [Plaintiff] *continued to report back pain . . . .*" (Doc. 12-3 at 55) (emphasis added). The ALJ then described post-surgery x-rays of Plaintiff's spine from April 2016, noting "a good fusion mass at the interbody fusion, *relatively acceptable but poor* spinal fusion mass in between the transverse process of L4-L5, and satisfactory fusion mass at L5-S1. Upon examination, [Plaintiff's] lumbosacral spine showed good range of movement, no nerve root compression signs, and no motor deficits." (*Id.*) (emphasis added). The ALJ objectively described the modest results of Plaintiff's spinal surgery—neither neglecting evidence that favored Plaintiff nor overstating evidence that did not. In fact, Dr. Heiner's official medical notes directly support the ALJ's statements. (Ex. 32F at 3, 5). Plaintiff now questions how a "failed" surgery can support medical improvement, (Doc. 13 at 13), but

---

[3]*Arthroscopy*, MAYO CLINIC (Aug. 15, 2019), https://www.mayoclinic.org/tests-procedures/arthroscopy/about/pac-20392974 ("Arthroscopy . . . is a procedure for diagnosing and treating joint problems. A surgeon inserts a narrow tube attached to a fiber-optic video camera through a small incision . . . Arthroscopy allows the surgeon to see inside [a] joint without making a large incision. Surgeons can even repair some types of joint damage during arthroscopy . . . .").

the ALJ did not claim that the x-rays showed that she improved, nor that the surgery even succeeded. Rather, the ALJ recognized the surgery's mixed results and added that she "took [Plaintiff's] spinal stenosis and status post lumbar fusion into consideration" for the residual functional capacity score. (Doc. 12-3 at 56). Thus, Plaintiff misconstrues the ALJ's opinion. Ultimately, the ALJ reasonably factored Plaintiff's x-rays into the RFC score without relying on them to show medical improvement.

### D.      Whether the ALJ improperly relied on Plaintiff's daily activity as substantial evidence of medical improvement

Plaintiff next claims that the ALJ improperly relied on her daily activity as substantial evidence of her medical improvement. (Doc. 13 at 14). Again, her argument fails.

Contrary to Plaintiff's assertion, the ALJ never found that her daily activity confirmed medical improvement. Rather, the ALJ said that "[a]lthough [Plaintiff's] activities of daily living illustrate some functional deficits, they are not of the level of severity related by [her]." (Doc. 12-3 at 56). She went on to list activities Plaintiff routinely engaged in, including "tending to her own personal needs, cooking dinner, watering the flowers, washing laundry, going outside daily, driving herself, shopping for groceries, going to the movies regularly, and caring for her pets." (*Id.*) The ALJ concluded that this undercut Plaintiff's testimony on her functional limitations. (*Id.* at 57). However, the ALJ did not conclude that Plaintiff's activity proved that she recovered completely, or even enough to avoid a disability finding. Therefore, Plaintiff misconstrued the ALJ's opinion which, actually—as explained above—focused on Dr. Heiner's examinations and treatment notes (backed by Dr. Schmitter's opinion) to find objective medical improvement. (Doc. 12-3 at 55, 57).

Plaintiff argues that even if the ALJ did not *rely* on her daily activities as substantial evidence of medical improvement, the ALJ should not have considered them at all. Specifically, she notes that the court in *Orn v. Astrue*[4] said that "the mere fact that a plaintiff

---

[4] 495 F.3d 625, 639 (9th Cir. 2007).

has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." (Doc. 13 at 14). Therefore, Plaintiff contends that her own day-to-day routine should not—even to the slightest—discredit her statements on her functional limitations. However, the plaintiff in *Orn* engaged in just reading, watching television, and coloring. 495 F.3d at 639. The court held that these amusement-and-rest-related-activities "d[id] not meet the threshold for transferable work skills." (*Id.*). In contrast, Plaintiff has engaged in various chores and physical tasks that *could* transfer to the workplace— certainly more so than coloring in a coloring book. Although Plaintiff need not "be utterly incapacitated to be eligible for benefits,"[5] she has demonstrated the responsibility, self-care, mental aptitude, motor skills, and carrying and handling capacity to succeed in at least basic jobs. Hence, the ALJ did not err by adjusting her opinion on Plaintiff's functional limitations according to her daily activity.

### E.     Whether the ALJ improperly relied on Dr. Cano's examination as substantial evidence of medical improvement

Plaintiff next claims that the ALJ improperly relied on Dr. Cano's 2014 evaluation as substantial evidence of medical improvement. (Doc. 13 at 15). Her argument fails.

The ALJ did not equate Dr. Cano's examination with substantial evidence of objective medical improvement. Again, the ALJ found medical improvement based primarily on Dr. Heiner's routine examinations from March to September 2016, as well as Dr. Schmitter's supporting October 2016 opinion. (Doc. 12-3 at 55, 57). Although the ALJ referenced Dr. Cano's 2014 exam, noting that Plaintiff could sit, stand, walk, get on or off the examination table, stoop, stand on one foot, and balance, she did not conclude that this showed Plaintiff's medical improvement in October 2016. (*Id.* at 57). Rather, the ALJ merely suggested that "this information indicates . . . that [Plaintiff] is more able-bodied than she alleged." (*Id.*). The ALJ also examined Plaintiff's other medical records from December 2013 to November 2016,[6] comprehensively analyzing her condition during the time she claimed disability. (*Id.*). Then the ALJ generally concluded that Plaintiff "[wa]s

---

[5] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).
[6] Citing Ex. 7F, 15F, 19F, 21F, 25F, 33F.

described as well nourished, well developed, and in no acute distress." (*Id.*). Regardless of whether this analysis discredits Plaintiff's recurring complaints about the severity of her condition for all those years, the ALJ did not rely on it. In fact, the ALJ noted that she "afford[ed] minimal weight" to Dr. Cano's opinion. (Doc 12-3 at 58). Therefore, the ALJ did not improperly equate records detailing Plaintiff's pre-surgery condition with post-surgery improvement.

### F. Whether the ALJ arbitrarily discredited Plaintiff's testimony without a "clear and convincing" reason

Plaintiff last claims that the ALJ rejected her testimony without a "clear and convincing" reason. (Doc. 13 at 16). Her argument fails.

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). At this step, a claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Additionally, a claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

Second, if the claimant satisfies the first step of the analysis, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). "Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, [the ALJ] may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *see Lingenfelter*, 504 F.3d at 1036. The ALJ may not fulfill this requirement

by making general findings; "rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "The clear and convincing standard is the most demanding requirement in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002).

In assessing a claimant's credibility, an ALJ may consider a range of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Other factors that an ALJ may consider when determining the credibility of a claimant's symptoms include: the location, duration, frequency, and intensity of other symptoms; factors that precipitate and aggravate the symptoms; medications taken and treatments received for symptom relief; any other measures for symptom relief; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3P, 2017 WL 5180304, at * 7–8 (Oct. 25, 2017). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 1. Plaintiff's Denial of Recovery

First, Plaintiff alleges that she never reported any medical improvement to Dr. Heiner but, in fact, repeatedly complained of knee pain. (Doc. 13 at 9) (citing Ex. 32F at 7, 20, 22). Moreover, five months after surgery, Plaintiff "threatened to sue [Dr. Heiner], sa[ying] [he] was not paying attention to what she was asking or complaining about," and she "demanded to have her knee replacement removed . . . ." (Ex. 32F at 24). However, Plaintiff ultimately backtracked, apologizing to Dr. Heiner and requesting his care again (despite his own reluctance). (*Id.* at 32). This shows that she trusted his professional judgment and valued his services as a means for her left knee recovery—recanting her prior

criticism of his performance. Regardless, her initial complaints lacked medical support. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about [] pain or other symptoms will not alone establish that [Plaintiff] [is] disabled."). Although the ALJ must consider all of Plaintiff's statements, she must ignore all those that contradict "the medical signs and laboratory findings and other evidence." (*Id.*). Substantial evidence in Dr. Heiner's and Dr. Schmitter's reports (detailed above) reveal the success of Plaintiff's left knee surgery. This directly conflicts with Plaintiff's complaints, thus supporting the ALJ's decision to disregard her complaints. See *Thomas*, 278 F.3d at 959–60 (holding that when the ALJ finds "no objective medical evidence to support [Plaintiff's] descriptions of her pain and limitations," this serves as "specific, clear[,] and convincing" justification for discounting her testimony).

2.     Plaintiff's Claims of Cane Use

Plaintiff also argues that the ALJ failed to acknowledge her testimony regarding her current cane use. (Doc. 13 at 18) (citing Doc. 12-3 at 89). However, she testified to just that—her *use*, and not her *need*, for a cane. Lacking "objective medical evidence" that Plaintiff actually needed an assistive device to walk, the ALJ appropriately disregarded her testimony on the matter. *See Thomas*, 278 F.3d at 959 (limiting the evidentiary influence of a plaintiff's conclusory, subjective statements about her need for a cane).

Moreover, the record contradicts Plaintiff's statements here, too. Just two days after her left knee replacement, Dr. Binder recorded that she "[did] reasonably well walking around," without mention of a cane. (Ex. 31F at 4). A month-and-a-half later, Dr. Eung-Jun Cha confirmed that Plaintiff "walk[ed] independently." (Ex. 32F at 5). Even though Dr. Powar noted that Plaintiff limped in May 2016 (well before October when the ALJ found that she recovered), he still did not recommend an assistive walking device. (Ex. 33F at 17). Plaintiff also "walked with good reciprocating gait" after her pes anserine bursa injections in August 2016. (Ex. 32F at 31). Another report from Dr. Powar in December 2016 noted her "normal" gait. (Ex. 34F at 6). None of these doctors referred to Plaintiff using a cane, nor did they prescribe one to facilitate her recovery. In fact, they found that

she could walk independently and normally as soon as two days after surgery. This medical evidence refutes Plaintiff's claims that she required a cane to walk. Accordingly, the ALJ provided clear and convincing reasons for not crediting Plaintiff's symptom testimony regarding the use of a cane.

Plaintiff's symptom testimony being inconsistent with the objective medical evidence of record is thus a clear and convincing reason to discredit her testimony. *See Carmickle*, 533 F.3d at 1161. The ALJ neither erred in finding objective medical improvement despite Plaintiff's complaints, nor in dismissing her unsupported claim that she required an assistive device.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 17th day of September, 2019.

James A. Teilborg
Senior United States District Judge